UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSCAR ESPINDOLA SOLANO,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-3229-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Oscar Espindola Solano is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, challenging his June 30, 2026, arrest and redetention by ICE, as well as his subsequent August 25, 2026, bond denial by an immigration judge ("IJ"), as unconstitutional. Dkt. 1. He seeks release from custody. *Id.* at 18-19. His petition is accompanied by a declaration from one of his attorneys who represented him at the challenged bond hearing, Katrina Kilgren. Dkt. 2 ("Kilgren Decl.").

Respondents filed a return (Dkt. 7), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Vincent M. Cvitanovic (Dkt. 8) ("Cvitanovic Decl.") and their counsel, Lawrence Van Daley (Dkt. 9) ("Van Daley Decl."). Petitioner filed a

traverse in reply. Dkt. 11. On October 1, 2026, Petitioner filed a praecipe to attach additional documents to his traverse. Dkt. 12.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 1) for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who first entered the United States sometime in 2005 when he was 17 years old, fleeing what he asserts was persecution from his native country. Dkt. 1, ¶¶ 24-25.

On October 30, 2010, the Junction City (Oregon) Police Department arrested Petitioner for "Failure to Carry and Present Driver's License." Cvitanovic Decl., ¶ 5. He was convicted on November 4, 2010. *Id.* The following day, ICE Enforcement and Removal Operations ("ERO") arrested Petitioner following his release from local custody and placed him into immigration custody. *Id.* ¶ 8. On November 13, 2010, ERO released Petitioner after he was granted voluntary departure to Mexico. *Id.* ¶ 10.

Due to what he describes as continuing threats to his and his family's safety, Petitioner again fled Mexico and re-entered the United States in 2011. Dkt. 1, ¶ 27.

Prior to Petitioner's 2026 arrest and redetention at issue here, it appears Petitioner settled in the Eugene, Oregon area with his wife and three U.S. citizen children, where he asserts he has lived for over ten years. *Id.* ¶ 32. His wife characterizes Petitioner as the "primary financial provider for [their] family" and relies on him "to help manage all of the moving pieces of [their] life." *Id.* Petitioner's children have special needs that require his support. *Id.*

On January 9, 2026, Petitioner was arrested in Eugene, Oregon for the crimes of "Driving Under Influence, Hit and Run – Property Damage, Driving Uninsured, Careless Driving, and

Open Container." Cvitanovic Decl., ¶ 5. As of September 24, 2026, Officer Cvitanovic asserts that case remains pending in the Eugene Municipal Court. *Id.*

On April 17, 2026, Petitioner was arrested for Driving While Suspended/Revoked. *Id.* Petitioner was convicted of that offense in the Eugene Municipal Court on June 30, 2026. *Id.*

Petitioner's current immigration detention stems from a June 30, 2026, arrest by ICE. Officer Cvitanovic asserts that ERO learned of "Petitioner's arrest record via a referral system" which led to ERO issuing a warrant for Petitioner's arrest on May 11, 2026. *Id.* ¶ 12; *see* Van Daley Decl., ¶ 2, Ex. 2 (warrant). He further asserts that on June 30, 2026, ERO "encountered Petitioner after conducting surveillance in Eugene, Oregon[.]" Cvitanovic Decl., ¶ 12. He was arrested, transported to the Portland ICE office for additional processing, and thereafter transferred to the NWIPC, where he remains detained. *Id.* ¶¶ 13-14.

The same day, ERO served Petitioner with a Notice to Appear ("NTA"), charging him with inadmissibility under the Immigration and Nationality Act ("INA"). *Id.* ¶ 15; *see* Van Daley Decl., ¶ 2, Ex. 3.

On August 11, 2026, Petitioner filed applications for relief from removal with the Executive Office for Immigration Review ("EOIR"). *Id.* ¶ 17.

On August 12, 2026, Petitioner filed a request for a bond redetermination with the EOIR. *Id.* ¶ 18. Prior to the hearing, Petitioner filed a written bond motion (Dkt. 10 at 3-5), along with evidence supporting his request. That evidence included a declaration from Petitioner (*id.* at 65-69, a declaration from his wife (*id.* at 72-73), federal tax filings and documents (*id.* at 10-21), his wife's Certificate of Naturalization from U.S. Citizenship and Immigration Services (*id.* at 22), birth certificates for his U.S. citizen children (*id.* at 23-25), a letter of support from Petitioner's landlord (*id.* at 26), employment documents for Petitioner's wife (*id.* at 28-31), pay stubs from

Petitioner's current employer (*id.* at 32-34), a letter of support from Petitioner's employer (*id.* at 35), charging documents from Petitioner's pending criminal case (*id.* at 36-37), and various letters of support attesting to Petitioner's character (*id.* at 38-51). DHS filed a four-page Record of Deportable/Inadmissible [Noncitizen] Form I-213 as evidence for the bond hearing. *See* Van Daley Decl., ¶ 2, Ex. 5

The bond hearing occurred on August 25, 2026. Cvitanovic Decl., ¶ 19. The immigration judge ("IJ") denied bond, finding that Petitioner posed a danger and a flight risk.[1] *Id.* The IJ issued her order on a checkbox form. *See* Van Daley Decl., ¶ 2, Ex. 4. The box indicating "Danger/Flight Risk" is checked. *Id.* at 2. Under a section entitled "Additional Information", a box is checked that states, "Conditional release is DENIED under any conditions set by ICE/DHS." *Id.* A box indicating the IJ considered Petitioner's ability to pay a bond is also checked. *Id.* There are no additional findings or analysis. *See generally id.*

Petitioner filed an appeal of the IJ's bond denial to the Board of Immigration Appeals ("BIA") on or around September 4, 2026. Cvitanovic Decl., ¶ 20; *see* Dkt. 1-5 at 2-5 (Notice of Appeal).

On September 25, 2026, the IJ issued a written "Memorandum of the Immigration Judge", memorializing her August 25, 2026, bond decision. Dkt. 12-2.

Petitioner is scheduled to attend an immigration merits hearing on October 15, 2026. Cvitanovic Decl., ¶ 22.

---

[1] Officer Cvitanovic asserts that at the bond hearing, the IJ found "DHS had met its burden of demonstrating that Petitioner is both a danger to community and flight risk by clear and convincing evidence." Cvitanovic Decl., ¶ 19. Officer Cvitanovic does not state that he attended the hearing himself and does not expressly assert how he has independent knowledge of what transpired at the hearing. *See generally id.* Respondents' return memorandum does not provide clarification. As further explained below, *see infra* Part C(2), because Officer Cvitanovic's assertion conflicts with the IJ's written decision, the Court assumes it is an error and that *Petitioner* held the burden at the challenged hearing.

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner asserts three claims for relief. He first asserts that the IJ's failure to properly apply the factors articulated in *In Re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), when deciding whether bond was appropriate was an abuse of discretion and a violation of his due process rights under the Fifth Amendment. Dkt. 1, ¶¶ 38-43, 59-62. Relatedly, his second claim asserts that his detention is not "reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Id.* ¶ 44. Finally, Petitioner challenges his June 30, 2026, arrest and detention, without first receiving notice and an opportunity to be heard, as violative of his due process rights. *Id.* ¶¶ 46-50, 67-70. He contends all violations require his release. *Id.* ¶¶ 51-52.

Respondents assert in response that Petitioner's detention is lawful, his challenge to the IJ's bond denial is nevertheless premature, and that he should first be required to exhaust his BIA appeal before seeking habeas relief in district court. Dkt. 7 at 6-9. As for Petitioner's June 30, 2026 arrest, Respondents contend that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner was not entitled to pre-deprivation notice or an opportunity to be heard. *Id.* at 9-14.

//

**A. Order of Claims**

For the sake of clarity, the Court briefly discusses the order of Petitioner's claims considered.

Petitioner challenges the lawfulness of his June 30, 2026, arrest and detention by ICE agents, as well as the lawfulness of his continued detention as a result of the IJ's subsequent discretionary bond decision. While it would make logical sense to take these claims as they occurred chronologically—especially since Petitioner asserts that they independently entitle him to release from custody—courts in this District have denied procedural due process claims arising under *Mathews*, such as Petitioner's arrest claim, when there has been a subsequent, lawful, custody determination. In other words, courts have found that a lack of pre-deprivation notice and opportunity to be heard can be cured by a subsequent, lawful bond decision by an IJ. *See Singh v. Noem*, 2026 WL 482389, at *3 (W.D. Wash. Feb. 20, 2026) (collecting cases).

In *Singh*, the petitioner entered the United States in 2023 and was released on his recognizance two days later. *Id.* at *1. On November 6, 2025, ICE arrested the petitioner pursuant to an administrative warrant; which the petitioner asserted occurred without receiving prior notice. *Id.* After he was detained, the petitioner received a bond hearing before an IJ. *Id.* The IJ denied jurisdiction but made an alternative finding that if the IJ had jurisdiction, petitioner was ineligible for bond because he posed a flight risk. *Id.* The petitioner did not challenge the IJ's discretionary bond decision in his habeas petition. *Id* at *2.

In denying the petition, the court noted that, "irrespective of other alleged legal errors, petitioners are not entitled to habeas relief when an IJ finds a separate basis for their detention and that basis is unchallenged." *Id.* at *3. The court went on to conclude, "[E]ven assuming a legal error occurred at the outset of [p]etitioner's detention, the IJ's subsequent bond denial

supplies a lawful basis for his detention unless and until [p]etitioner demonstrates separate legal error invalidating that decision." *Id.*

Accordingly, the Court first considers whether the IJ's bond decision was lawful because if it demonstrates a lawful basis for detention, it potentially cures any deficiencies related to Petitioner's earlier June 30, 2026, arrest and detention. If it does not, it is possible the Court need not reach Petitioner's remaining claims that seek duplicative relief.

**B. The Court Waives Exhaustion**

Before assessing the lawfulness of the IJ's bond denial, however, the Court turns to the threshold issue of whether Petitioner should be required to first exhaust his pending BIA appeal before seeking habeas relief here. As noted, Respondents take the position that Petitioner is required to fully exhaust his BIA appeal before seeking relief. Dkt. 7 at 6-8.

The exhaustion of administrative remedies in cases brought under § 2241 is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record; (2) waiving the requirement would encourage bypassing the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id*. (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). If a court determines that an immigration detainee has failed to exhaust administrative remedies as a prudential matter, it should either dismiss the matter without prejudice or stay the case to permit exhaustion. *Id*. However, even if these "*Puga*" factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id*.

(quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these "*Laing*" factors applies." *Aden v. Nielsen*, C18-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

Respondents do not discuss either *Puga* or *Laing* in their return memorandum, nor do they discuss the relevant factors regarding excusal or waiver of the exhaustion requirement. Instead, Respondents assert that the Ninth Circuit "requires the BIA to decide issues that are reviewable by the BIA on appeal before a district court does." Dkt. 7 at 7 (citing *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003). Respondents then point to several district court cases that required exhaustion and ask this court to follow suit. *Id.* (citing *Aden*, 2019 WL 5802013, at *1-2; *Chavez v. Immig. and Cust. Enf't Field Off. Dir.*, No. C23-1631-JNW-SKV, 2024 WL 1661159 (W.D. Wash. Jan. 25, 2024), *report and recommendation adopted*, No. 2:23-CV-1631, 2024 WL 1658973 (W.D. Wash. Apr. 17, 2024)).

To the extent *Rojas-Garcia* is relevant, it is only for the general rule that a petitioner must first exhaust administrative remedies that are correctable by the administrative tribunal before raising constitutional claims in a habeas petition. *Rojas-Garcia*, 339 F.3d at 819 (citing *Liu v. Waters*, 55 F.3d 421, 424 (9th Cir. 1995). As noted above, the Ninth Circuit recognized in *Hernandez*, *Puga*, and *Laing*—all decided after *Rojas-Garcia*—that exceptions to that general rule can apply and that exhaustion can be appropriately excused or waived. Further, the district court cases relied upon by Respondents are distinguishable. In *Aden*, the court noted that the petitioner did "not argue that the administrative remedies available would be inadequate, inefficacious, or void." *Aden*, 2019 WL 5802013, at *3. And in *Chavez*, this Court found that "Petitioner did not address exhaustion in his petition[.]" *Chavez*, 2024 WL 1661159, at *3.

Here, the petition does not suffer from the same defects. As Petitioner asserts and courts in this District have repeatedly found, the pursuit of administrative remedies would involve unreasonable delay. *See, e.g., Segura Serrano v. Scott*, No. C26-1268-LK, 2026 WL 1674357, at *3 (W.D. Wash. May 26, 2026) (noting evidence of the BIA's "'unprecedented'" caseload after it was reduced in size by nearly one half in early 2025, data from 2024 showing BIA decisions take over six months, and that "data in 2025 indicates that the delay has exponentially worsened.") (cited sources omitted); *W.T.M. v. Bondi*, No. C25-2428-RAJ-BAT, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) (noting data released by the EOIR reflecting that the average processing time for bond appeals in 2024 exceeded 200 days and that "[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals.") (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248-49, 1253-54 (W.D. Wash. 2025)).

Further, there is no dispute Petitioner "has dependents who rely upon him financially and emotionally, and that relationship is severely negatively impacted by his continued detention." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026). *See also Loya Medina v. Hernandez*, No. C26-0772-GJL, 2026 WL 1260848, at *6 (W.D. Wash. May 7, 2026) (finding "Petitioner's uncontested factual submissions are sufficient to show irreparable harm and warrant waiver of the exhaustion requirement."). The record shows that Petitioner's wife and three children rely on him for, at minimum, financial and familial support. Dkt. 10 at 72-73; *see also* Dkt. 1-3, ¶¶ 11-13. "[S]eparated families . . . are substantial injuries and even irreparable harms." *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017).

Finally, the instant petition alleges a deprivation of constitutional due process, a claim that Courts in this district find well-suited for district court review. *W.T.M.*, 2026 WL 262583, at

*2 (citing *Scott v. Wamsley*, No. C25-1819-TMC, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026)).

For these reasons, the Court will not require Petitioner to first exhaust his pending appeal with the BIA before this Court decides his habeas petition.

### C. The August 25, 2026, Bond Hearing

#### 1. *Legal standards for bond determinations and district court review*

In making a bond decision under § 1226(a), an IJ must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In Re Guerra*, 24 I. & N. Dec. at 40 (citing *Matter of Patel*, 15 I. & N. Dec. 666 (BIA 1976)). An IJ may also consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee prosecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *See id*.

The Court reviews IJ bond determinations for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779-80 (9th Cir. 2024). Specifically, while factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard – such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id*. at 782

(quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). That is, while the Court does not properly review "underlying factual determinations" such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides[,]" it may review for an abuse of discretion pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id*. at 782-84 (quoting *Wilkinson*, 601 U.S. at 225). Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id*. at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

2. *Evidence of the challenged bond hearing*

Here, the parties did not provide a contemporaneous audio recording or transcript of the challenged hearing. However, Petitioner's counsel submitted a sworn declaration, Dkt. 2, unchallenged by Respondents, *see generally* Dkt. 7, outlining the IJ's decision.

Kilgren asserts that the hearing lasted "just under 14 minutes." Kilgren Decl., ¶ 2. To the best of Kilgren's memory, the IJ "based her decision on [Petitioner's] two unlawful entries to the United States and his two pending misdemeanor criminal charges that arise from the same incident." *Id.* ¶ 3.

Kilgren further asserts the IJ did not engage with the evidence showing Petitioner is not a flight risk, including (1) the fact that he and his family have lived at the same address for over ten years and consistently paid rent, (2) the fact that he and his wife share three U.S. citizen children who require special care, (3) the letters of support "which demonstrate [they] are involved in their community and their children attend local schools," and (4) the letter from Petitioner's employer. *Id.* ¶ 4.

Regarding Petitioner's pending criminal matters, Kilgren also asserts that the IJ did not acknowledge the charges are unadjudicated misdemeanors stemming from the same incident, or that "the criminal justice system found that [Petitioner] was safe to be released while [the] charges remain pending." *Id.* ¶ 5.

Kilgren finally asserts that "it became clear [the IJ] had not read [Petitioner's] Motion for Bond . . . , nor reviewed [Petitioner's] Evidence in Support of Bond," filed on August 12, 2026[.]" *Id.* ¶ 6.

As noted, the IJ also issued a written memorialization of her bond decision during this case's pendency. Dkt. 12-2. The Court provides a summary of that memorandum here. The IJ acknowledges the bond hearing was conducted on August 25, 2026, at the request of Petitioner. *Id.* at 4. The IJ acknowledges DHS had not set a monetary bond in Petitioner's case. *Id.* The memo asserts that "[t]he respondent has the burden to demonstrate by clear and convincing evidence that respondent is not a danger or a flight risk." *Id.* (citing *Matter of Siniauskas*, 27 I. & N. Dec. 207 (BIA 2018); *Matter of Fatahi*, 26 I. & N. Dec. 791, 793-94 (BIA 2016); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112-13 (BIA 1999), *modified on other grounds*, *Matter of Garcia Arreola*, 25 I. & N. Dec. 267 (BIA 2010)).

The memo states that "[d]angerous [noncitizens] are properly detained without bond" and that "even if [a noncitizen] is not a danger to the community the court can still deny bond as a matter of discretion." *Id.* (citations omitted). The memo also lays out the *Guerra* factors. *Id.* at 4-5.

The memo next discusses Petitioner's evidence and it reads, in full:

> The respondent filed tax records and a declaration in support of the bond request. The respondent is a native and citizen of Mexico who first entered the United States without permission in 2005. The respondent married in 2016. There are no visa petitions on his behalf. His wife works in the school district. He has three United

> States citizen children. The 11-year-old child requires speech and language classes. His child in high school has celiac and hyperactivity. His youngest child is age seven. He will apply for Cancellation of Removal as a Nonpermanent Resident, and for asylum and related protection. In 2010 the respondent was in a traffic accident and voluntarily returned to Mexico. The respondent admits he reentered the United States unlawfully in 2010. He found out his wife was pregnant. He also had some safety concerns in his community. He filed a Form I-589 16 years after he reentered the United States. He is subject to a one-year bar. The respondent requested bond in the amount of $1,500 – [] $5,000.

*Id.* at 5 (internal docket citations omitted).

Next, the memo discusses DHS's evidence and the IJ's subsequent decision. It reads, in full:

> DHS evidence reveals that respondent was arrested on January 9, 2026, for driving under the influence, hit and run with property damage. On April 17, 2026, the respondent was arrested for criminal driving while his license was suspended or revoked.
>
> The court finds the respondent is a flight risk given his significant immigration history and speculative forms of relief. The court finds he is a danger given his recent pattern of criminal history and the nature of the offenses. The court does not find respondent met his burden of proof.
>
> Order: the court denied the request for bond or conditions.

*Id.* (internal docket citations omitted).

3. *The IJ abused her discretion*

The IJ's written decision makes clear that she denied bond for two reasons: Petitioner's "significant immigration history and speculative forms of relief" demonstrated a flight risk, and Petitioner's criminal history demonstrated a danger. Dkt. 12-2 at 5. Petitioner asserts that, in making these findings, the IJ abused her discretion by failing to apply the *Guerra* factors to his individual circumstances. Dkt. 1, ¶¶ 60-61. As noted, Respondents do not "defend" the IJ's decision or otherwise seek to argue Petitioner *is* a flight risk or danger. *See generally* Dkt. 7.

As an initial matter, the Court observes that the memorandum indicates the IJ held Petitioner to a heightened, "clear and convincing" standard of proof. Dkt. 12-2 at 4. While the burden is properly held by the noncitizen requesting bond, *In Re Guerra*, 24 I. & N. Dec. at 40, the Ninth Circuit has acknowledged the standard to meet that burden is by a preponderance of the evidence. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (discussing bond hearings under 8 U.S.C. § 1226(a)) ("If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release.").

The cases cited by the IJ in her written memorandum – *Sinauskas*, *Fatahi*, and *Adeniji* – are silent regarding the standard of proof. As this Court has recently acknowledged, while "there is some lack of clarity as to the applicable standard of proof in a [§] 1226(a) bond hearing, this Court finds no jurisprudential support for the IJ to require Petitioner to meet his burden of proof by clear and convincing evidence." *Torres-Montes v. Hernandez*, 2026 WL 2921991, at *4 (W.D. Wash. Sept. 29, 2026). In *Torres-Montes*, the court found that the IJ did not articulate the standard of proof at the hearing, but referenced a "clear and convincing" standard in the bond memorandum issued afterward. *Id*. at *3. This Court found the IJ's application of the wrong standard of proof to be an abuse of discretion. *Id.* at *4 (citations omitted).

Moreover, the IJ also abused her discretion by failing to meaningfully engage with the relevant evidence and failing to provide a reasoned explanation why Petitioner's positive equities were outweighed by his immigration history, his purportedly speculative applications for relief, and his pending criminal charges. The Court addresses these bases in turn.

It is unclear from the IJ's memorandum what she considered "significant" about Petitioner's immigration history and how it evidences a risk that Petitioner will likely abscond or fail to attend future immigration hearings today. *See Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026) ("The IJ does not explain how [petitioner's] prior unlawful entry, an event that occurred almost three decades ago, . . . informs his flight risk *today*, . . . in the face of overwhelming evidence of his deep ties to his community and family.") (emphasis in original). The record shows Petitioner entered the United States in 2005, was granted voluntary departure in 2010, and reentered the United States in 2011. Dkt. 1, ¶¶ 25-27. Since then, he and his family have lived in the same home for over ten years and established a life in Oregon, he is active in church, and he has "many friends, relatives, and community members who are invested in his release from custody." *Id.* ¶ 33. Yet, the IJ's decision does not explain why Petitioner's decades' old immigration history evidenced a flight risk that outweighs his established life today, such that he poses a legitimate risk of absconding or failing to appear. Arguably, Petitioner's immigration history facially evidences only a reluctance to return to Mexico or leave the United States, not that he poses a risk of absconding; particularly when considering that Petitioner has expressed fear of returning to persecution in his native country.

As for Petitioner's "speculative forms of relief," the memorandum fails to provide the IJ's rationale in concluding that Petitioner's unadjudicated applications were speculative. While the BIA has provided that an IJ may consider the likelihood that relief from removal will be granted in determining flight risk, *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987); *accord Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020), the mere fact of limited forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano*, 2026 WL 1674357, at *8; *Tavurov v. Noem*, No. C26-0668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026)

(citing *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011), *abrogation on statutory grounds recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)). At most, the memorandum asserts that Petitioner is "subject to a one-year bar" but does not otherwise explain why that meant all of Petitioner's applications were speculative or why that purportedly speculative relief evidenced a risk of flight that outweighed Petitioner's individual circumstances, which again, included a fixed residence, a dependent family, and stable employment.

The IJ's dangerousness finding suffers from the same deficiency: a lack of reasoned explanation that shows why Petitioner's pending criminal allegations evidence an unmitigable danger to the community such that Petitioner should remain detained during the remainder of his immigration proceedings. The Court does not minimize the severity of DUI-related offenses, but would be remiss in failing to acknowledge the presumption of innocence and the "fundamental differences between an allegation, a criminal charge, and a criminal conviction." *Corado v. Bondi*, C26-1081-MLP, 2026 WL 1113386, at *5 (W.D. Wash. Apr. 24, 2026). Here, the IJ's memorandum provides no explanation beyond a passing acknowledgment that Petitioner was arrested and the conclusion that he poses a risk of danger. The IJ also fails to acknowledge that the local government responsible for prosecuting Petitioner found no reason to detain him during the pendency of his criminal matters. *See* Dkt. 11 at 7. As Petitioner notes, courts in this District have found an abuse of discretion when dangerousness findings are based on nonviolent offenses without further explanation. Dkt. 11 at 6 (citing *Roberts v. Scott*, C26-1333-TL, 2026 WL 2071146, at *8 (W.D. Wash. July 17, 2026); *Garcia Miranda v. Hernandez*, C26-0906-JNW, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026); *Sabillon Munoz v. Scott*, C26-2420-TL, 2026 WL 2694273, at *6 (W.D. Wash. Sept. 14, 2026)).

In sum, even assuming the IJ's written memorandum—issued one month after the bond hearing—reflects the IJ's thought process and rationale during the hearing,[2] it still remains entirely unclear what weight, if any, she assigned to Petitioner's positive equities and ties to the United States. An IJ need not mention every piece of evidence, but they must consider, and meaningfully engage with, the evidence submitted by a petitioner. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (acknowledging that the "BIA abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner . . .") (quoted source omitted); *Miri v. Bondi*, 2026 WL 622302, at *8–9 (C.D. Cal. Mar. 5, 2026). Because the Court is "left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors," it "must conclude that the [IJ] failed to do so, which constitutes an abuse of discretion." *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026). Petitioner is entitled to habeas relief.

**D. Release is the Remedy**

Petitioner requests release from custody. Dkt. 1 at 18. Respondents contend that any "appropriate remedy would be a new custody redetermination hearing." Dkt. 7 at 14 (citing 8 U.S.C. §§ 1226(a), 1226(e), 8 C.F.R. § 1003.19, and *Martinez*, 124 F.4th at 786). Respondents do not further explain why these cited sources support their argument that another bond hearing is the appropriate remedy. Respondents' pin-cite to *Martinez* only stands for the proposition that "[d]ue process does not require immigration courts to consider conditional release when determining whether to continue to detain a [noncitizen] under [8 U.S.C.] § 1226(c) as a danger to the community." *Martinez*, 124 F.4th at 786. But here, as Respondents acknowledge,

[2] In *Singh*, the court recognized that "[p]ost-hoc reconstruction" can be inadequate because, "once the court has entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding." *Singh*, 638 F.3d at 1205.

Petitioner was arrested and detained under § 1226(a), the statutory detention framework authorizing discretionary release. Dkt. 7 at 11.

Courts in this District have, under similar facts and circumstances, found no basis for continuing to detain petitioners and ordered their immediate release. *See, e.g., Segura Serrano*, 2026 WL 1674357, at *9; *Loya Medina*, 2026 WL 1260848, at *8-9; *Soriano*, 830 F. Supp. 3d at 1079; *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release.") (internal and other citations omitted). The Court here similarly finds no basis for Petitioner's continued detention and orders his immediate release with reasonable conditions of supervision, if warranted.

**E. Remaining Claims**

Having found that the IJ failed to correctly apply the law during Petitioner's August 25,2026, bond hearing, and that no legal basis for his continued detention exists, the Court need not reach Petitioner's remaining claims, Dkt. 1, ¶¶ 63-66, 67-70, as requested relief would be duplicative. Those claims are denied as moot.

Finally, Petitioner seeks to enjoin the government from redetaining him during the pendency of his removal proceedings. Dkt. 1 at 18. The petition does not meaningfully engage with the request beyond citing recent cases from this District, which the Court will not consider for the first time in reply, that ordered similar relief. The petition otherwise does not provide legal authority for the Court to order permanent injunctive relief. The request is therefore denied as unbriefed.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS:

(1) Petitioner's petition for writ of habeas corpus, Dkt. 1, is GRANTED in part.

(2) Respondents shall RELEASE Petitioner from custody **within 24 hours** of the issuance of this Order with reasonable conditions of supervision.

(3) Respondents shall file a notice with the Court confirming Petitioner's release **within 48 hours**.

(4) Petitioner's remaining claims are DENIED as MOOT.

(5) Petitioner's request for injunctive relief is DENIED as unbriefed.

(6) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 15th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge